UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ISHWARDAT RAGHUNATH,

                Plaintiff,

v.

STATE OF NEW YORK, *et al.*,

                Defendants.

**MEMORANDUM & ORDER**
23-CV-4622 (HG) (LB)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Ishwardat Raghunath commenced this *pro se* civil action on June 20, 2023. ECF No. 1 (Complaint). On that same date, Plaintiff moved for leave to proceed *in forma pauperis*. ECF No. 2 (Motion for Leave to Proceed *in forma pauperis*). On July 24, 2023, I denied Plaintiff's motion to proceed *in forma pauperis* because his application was incomplete, directed Plaintiff to file a completed application, and granted leave for Plaintiff to file an amended complaint. ECF No. 4 (Order Denying Leave to Proceed *in forma pauperis*). On August 23, 2023, Plaintiff again moved for leave to proceed *in forma pauperis*. ECF No. 6 (Second Motion for Leave to Proceed *in forma pauperis*). On November 13, 2023, Plaintiff filed an amended complaint. ECF No. 14 (Amended Complaint). Plaintiff's second motion for leave to proceed *in forma pauperis* is granted. However, for the reasons stated herein, the Court dismisses Plaintiff's Amended Complaint.

## BACKGROUND

    Plaintiff's 129-page Amended Complaint[1] commences with 38 pages of general claims about Plaintiff's "rights" regarding investigations into child neglect and abuse, subsequent

---

[1] The Court previously informed Plaintiff that his complaint would be reviewed under Rule 8 which requires Plaintiff to provide "(1) a short and plain statement of the grounds for the court's jurisdiction . . . , (2) a *short and plain* statement of the claim showing that the pleader is

proceedings in Family Court, and vague references to the involvement of law enforcement agencies, foster care agencies, and hospital staff. ECF No. 14 at 5–42. It then proceeds to set forth specific factual allegations against some of the 37 named Defendants, which are summarized here as best the Court can discern from the Amended Complaint.

Plaintiff is the father of five children and brings this action on behalf of the four youngest children, whom he had with his wife, Defendant Phyllis Seemongal.[2] *Id.* at 6, 62. Plaintiff alleges that a dispute arose between Plaintiff and Defendant Seemongal and her sister, Defendant Radica Persaud that lasted from the end of June 2007 through the beginning of July 2007. *Id.* at 64. Thereafter, Defendant Seemongal and Defendant Persaud called the New York State Administration for Children's Services ("ACS") and made allegedly false allegations against Plaintiff "for plaintiff['s] wife to gain custody [of] the children[]." *Id.* at 64, 89, 99. Plaintiff claims that on July 2, 2007, when Plaintiff was not home, Defendants Felicia Miller, an ACS caseworker, and New York City Police Department ("NYPD") Officers Buckley, Thomas J. Sommerville, and Guisella Rodriguez, forcibly entered and searched Plaintiff's home and strip-searched four of the children, looking "for possible signs of neglect, sexual abuse, or physical abuse." *Id.* at 65–68, 89–93. Plaintiff alleges that although there were no signs of neglect or abuse, Defendants Miller, Buckley, Sommerville, and Rodriguez removed the children from the home and took them to Defendant Mary Immaculate Hospital. *Id.* at 69, 93. At the hospital,

---

entitled to relief, and (3) a demand for the relief sought." *See* ECF No. 4 at 2-3 (emphasis added in the original).

[2]   This Court previously informed Plaintiff that a *pro se* litigant cannot represent a child or another individual unless the litigant is an attorney admitted in this Court. *See* ECF No. 4 at 1 n.1 (citing *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) ("It is . . . a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child."); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf")).

Defendants Miller, Buckley, Sommerville, and Rodriguez assisted in removing the children's clothing so that medical providers could examine the children. *Id.* at 70. Plaintiff claims that although "[h]ospital physicians found no proof of sexual abuse or physical neglect," Defendant Miller and unidentified police officers transported the children to the Queens County Child Abuse Squad at the Queens Advocacy Center to be interviewed by Defendants Buckley, Sommerville, Rodriguez and Detective James Ropenus. *Id.* at 71. The children were then temporarily released to Defendant Seemongal. *Id.* at 93.

On July 5, 2007, Defendant Miller submitted allegedly "fabricated and falsif[ied] information[]" at a hearing that Plaintiff was not notified about in Queens County Family Court. *Id.* at 71, 93, 94. On July 6, 2007, Plaintiff's eldest child was released to her grandmother, without visitation with Plaintiff, and the other children were placed in ACS custody. *Id.* at 72. On July 9, 2007, Defendant Seemongal and several of Plaintiff's family members requested that the children be placed in their care. *Id.* at 73. Instead, based on a petition filed by Defendant Miller, the Family Court placed the children in separate foster households, with different "customs and religious practices" than the children were accustomed to. *Id.* On July 17, 2007, the children were placed with Defendant Persaud as their foster mother. *Id.* at 74. According to Plaintiff, Defendant "Seemongal made false statements and allegations against plaintiff['s] family that plaintiff sexually abuse[d] her and her children." *Id.* at 94.

Plaintiff further alleges that on August 8, 2007, Defendant Shawneya Pope, a MercyFirst caseworker, interviewed and examined the children and caused Defendant Persuad and the children "to make false statements about being sexually abused." *Id.* at 74–75. On August 15, 2007, Defendant Persaud provided Defendant Emelita Mendoza, a MercyFirst psychiatrist, information about alleged abuse. *Id.* at 76. Plaintiff claims that on August 29, 2007, Defendant Persaud lied about Plaintiff to two MercyFirst physicians, Defendants Joy Woo and Margaret

3

Conners. *Id.* at 76.  In September 2007, a different MercyFirst physician, Defendant Lois Abramhik, allegedly conducted interviews of the children without recording the interviews as required by court order.  *Id.* at 77.  Further, additional MercyFirst physicians, Defendants Woo, Janice Bennett, Dr. Lew, and Muriel Pollycock allegedly interviewed Plaintiff's children.  *Id.* at 81–83.  Defendant Pollycock allegedly "disregarded the facts in determining reuniting [one of Plaintiff's daughters] with the rest of the children and their family was in their best interest." *Id.* at 83.  Defendant Woo prepared a report without reviewing notes provided by "expert[] psychologist[s]" who interviewed Plaintiff.  *Id.* at 83.  Defendants Seemongal, Persaud, Pope, Abramhik, Gina Cambria, Miller, Woo, Bennett, Buckley, Sommerville, Rodriguez, Alice Bacon, Arthur, and Ropenus are alleged to have "concealed exculpatory evidence" and given false evidence or testimony in Family Court that was adverse to Plaintiff.  *Id.* at 30, 35–36, 75, 77, 81–83, 93–94, 99, 100–01.

Plaintiff alleges that he was given no visitation rights with his children from July 2, 2007 until February 4, 2008.  *Id.* at 78.  Even after the Family Court ordered supervised visitation, Defendants MercyFirst and Persaud failed to provide timely and consistent visitation and communication.  *Id.* at 78–79.  Plaintiff claims that visitation with one of his daughters was permanently suspended.  *Id.* at 80–84, 100.  Plaintiff has not been in communication with the children from September 2008 to the present.  *Id.* at 86.

Plaintiff claims that Defendant Seemongal conspired with Defendant Martha Leonardo from February 2008 to October 2013 "to make false statements against Plaintiff to use as evidence in court."  *Id.* at 100.  On October 10, 2013, the children were returned to Defendant Seemongal, "at an unknown address to the plaintiff or the biological father who's been attempting to locate them for the last sixteen years without much success." *Id*. at 86.  On February 25, 2014, Defendant Seemongal filed a motion for custody of the younger children,

4

"which the court granted on default due to the plaintiffs father [*sic*] ³ not being aware, or produced to challenge the validity of the motion." *Id*.

The following supervisory employees, officials, and employers are alleged to be responsible for training and supervision, but are not alleged to have taken any specific actions against Plaintiff: Commissioner of the New York State Office of Children and Family Services Sheila J. Poole; former NYPD Commissioner Raymond Kelly; ACS Commissioner John B. Mattingly; Chief Executive Officer of MercyFirst Gerard McCaffery; Chair of the Board of Directors at the Legal Aid Society Richard J. Davis; Sound View Throgs Neck Community Mental Health Center; former Queens County District Attorney Richard Brown; and Patrice McFarlane-Wooden. *Id.* at 42–58, 101–05, 107, 113–14, 116. Plaintiff also seeks to hold institutional Defendants MercyFirst, its affiliates, Angel Guardian Campus and Mercy First Montague Center, and Mary Immaculate Hospital responsible for the actions of their employees in examining and evaluating Plaintiff's children, arranging foster care and visitation, withholding information from Plaintiff, and making statements in Family Court. *Id.* at 51–56, 59–60, 62, 79–87, 100–101, 104–105, 113–14, 116, 120–124. The City of New York and the County of Queens are vaguely alleged to have violated Plaintiff's constitutional rights, but the only actions attributed to these entities are that they employed individual defendants and were responsible for unidentified policies or customs. *Id.* at 8, 39, 41, 43–44, 49, 51, 55, 58, 104–105, 122.

---

³    The Amended Complaint includes many references to "Plaintiff and his children," *see, e.g., id.* at 5–13, 19–22, 24, 34, 76, 84, and describes the "father-daughters and father-sons" relationships, *see, e.g., id.* at 5–6, 11, 110. However, the Amended Complaint also mentions "the rights of plaintiff Princess Jashoda Raghunath and her family," and includes multiple references to "plaintiff and her father," and "her siblings." *See, e.g., id.* at 7–8, 10, 12, 14, 24, 28, 30, 32, 34, 37, 38, 53–56, 58–61, 74, 80–82, 85, 106, 110–111, 117, 126. This discrepancy may be explained by the similarities between the instant Amended Complaint and a prior complaint filed by Plaintiff's eldest daughter, Princess Jashoda Raghunath in *Raghunath v. State of New York, et al.*, No. 14-cv-4218, ECF No. 1, which appears to be the model for the instant action.

Plaintiff alleges that Defendant ACS, among other things, (a) initiated an investigation based on false information, (b) erroneously placed his children in foster care, (c) presented false statements in court, (d) delayed commencement of supervised visitation, (e) failed to reunite him with his children, and (f) employed or appointed some of the individual Defendants. *Id.* at 50–54, 66, 69, 73, 76, 79, 85–86, 124–25.

Defendants Melanie Shapiro, Emily Kaplan, and Stephen Forbes are Legal Aid attorneys who are alleged to have served as attorneys for Plaintiff's children, and "failed to effectively represent them." *Id.* at 58, 84. Defendant Era Eras is named in his capacity as counsel for MercyFirst. *Id.* at 54, 56. The Amended Complaint asserts, vaguely, that these individuals violated Plaintiff's rights, but it does not allege that any of these Defendants took any specific actions. *Id.* at 53–54, 58–59, 84 113–14, 116, 121–24. Plaintiff claims that Queens County Assistant District Attorney Donna Golia conspired with others in the negligent infliction of emotional distress. *Id.* at 117.[4]

Plaintiff requests hundreds of millions of dollars in damages for Plaintiff and his children. *Id.* at 125. He also seeks injunctive relief (a) "ordering the Family Court to reverse and vacate judgment entered against plaintiff . . . denying []visitation and custody of children", (b) "ordering defendants to remove all erroneous information and records in state registry, Family Court, ACS as applicable to plaintiff", (c) "ordering that plaintiff['s] children [be] returned to the residence of her father, and sister" [*sic*], and (d) "order[ing] prosecution against defendants who conspire[d] to defraud or violated Federal Law" under various federal criminal statutes. *Id.* at 124–26.

---

4   The Amended Complaint also mentions Defendants "Gottschalk," "Lassiter," "Woods," "Kell," "Ingram," "Cobb County" and "the State of Georgia," but these alleged Defendants were not named by Plaintiff as parties to this case. *Id.* at 42–61, 118–20.

6

## **LEGAL STANDARD**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020). Typically, "a *pro se* complaint should not be dismissed without granting leave to amend at least once." *Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020).

A district court shall dismiss an *in forma pauperis* action where it finds the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "A complaint that is time-barred fails to state a claim on which relief may be granted, and a district court may *sua sponte* dismiss a complaint as time-barred where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." *Khalil v. Pratt Inst.*, 818 F. App'x 115, 116 (2d Cir. 2020). Indeed, "[w]hile statute of limitations defenses are ordinarily raised by the defendant . . . courts can and do dismiss cases on their own initiative under Section 1915(e)(2) when an IFP plaintiff's complaint reveals that

---

[5] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

[his] claim is clearly untimely." *Kimberly W. v. Saul*, No. 21-cv-00042, 2021 WL 880110, at *3 (D. Conn. Mar. 9, 2021); *see also Merola v. Lowe*, No. 20-cv-00491, 2020 WL 4350205, at *1–2 (E.D.N.Y. July 29, 2020) (dismissing Section 1983 claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) where Plaintiff provided no basis to toll the statute of limitations). "Moreover, if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3)." *Robinson v. U.S. Postal Serv.*, No. 12-cv-5874, 2012 WL 6177948, at *1 (E.D.N.Y. Dec. 11, 2012) (dismissing Section 1983 claims where Court lacked subject matter jurisdiction to hear the action).

## DISCUSSION

### I. Plaintiff's Claims are Time-Barred

Plaintiff asserts various claims, which the Court generally interprets as claims under 42 U.S.C. §§ 1983 and 1985, which provide procedures for the redress of the deprivation of civil rights and conspiracy to interfere with civil rights. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Rivera v. City of New York*, No. 20-cv-9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). "To state a conspiracy claim under Section 1985, plaintiff must allege: (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen." *Baker v. Gallo, et al.*, No. 23-cv-2078, 2024 WL 233498, at *3 (S.D.N.Y. Jan. 22, 2024) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Under

Section 1985, "[p]laintiff must also allege the conspiracy was motivated by some racial or other class-based discriminatory animus." *Baker*, 2024 WL 233498, at *3.

Federal courts apply the state law statute of limitations for personal injury actions for claims under Sections 1983 and 1985, and in New York that statute of limitations is three years. *Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 199, n.2 (2d Cir. 2001) ("The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years"); *see also Rivera*, 2022 WL 1523165, at *4 ("Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations."); *Williams v. Dempsey*, No. 22-cv-04746, 2023 WL 6796217, at *9 (E.D.N.Y. Sept. 14, 2023) ("Section 1985 claims arising in New York are likewise subject to a three-year limitations period.").

Plaintiff's claims under Sections 1983 and 1985 arise from events that began in 2007, when certain Defendants removed Plaintiff's children from his custody, and continued until 2014, when Defendant Seemongal was granted custody of Plaintiff's younger children. ECF No. 14 at 64–68, 89–93, 100. Under these facts alleged by Plaintiff, it has been nearly a decade since state actors have been involved in determining the custody of Plaintiff's children. Consequently, Plaintiff's claims are time-barred as they fall outside the three-year statute of limitations for claims under Sections 1983 and 1985. *See, e.g.*, *Arafa v. New York,* No. 22-cv-4475, 2022 WL 3867650, at *2 (E.D.N.Y. Aug. 30, 2022) (finding plaintiff's claims under Sections 1983 and 1985 untimely where plaintiff sought relief more than four years after the alleged conduct occurred). Accordingly, Plaintiff's claims for damages for conduct that occurred between 2007 and 2014 are dismissed as time barred.

## II. Subject Matter Jurisdiction

The Court additionally lacks subject matter jurisdiction to hear Plaintiff's claims for injunctive relief, pursuant to which Plaintiff is asking, among other things, that this Court (a) vacate prior Family Court orders, (b) remove "all erroneous information and records" in an unspecified state registry, Family Court, and ACS, (c) return Plaintiff's now-adult children to his residence, and (d) commence criminal prosecution of Defendants under federal law. ECF No. 14 at 124–26. To the extent that Plaintiff asks this Court to order the Family Court to reverse and vacate its prior orders, the federal courts are specifically precluded from doing so under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923), and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 n.16 (1983), and precludes federal courts from "consider[ing] suits which seek to overturn state court judgments." *Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). For the *Rooker-Feldman* doctrine to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

All four requirements of the *Rooker-Feldman* doctrine are met here. First, Plaintiff claims he was adversely affected by the Family Court's orders removing his children from his home, placing the children in foster care, establishing limits on visitation, and eventually granting custody to the children's mother. Second, Plaintiff explicitly complains of injuries that he sustained as a result of the Family Court orders. Third, the relief Plaintiff seeks—reversing

the Family Court judgments and returning the children to his residence—invites this Court to review and reject the final Family Court orders. Fourth, Plaintiff brings this proceeding almost a decade after the Family Court judgments were entered. Because all four requirements of the *Rooker-Feldman* doctrine are satisfied, this Court is unable to exercise jurisdiction over Plaintiff's request for injunctive relief as they pertain to the prior Family Court orders.[6]

### III.    Leave to Amend

"*A pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014). Plaintiff has already amended his complaint in this action once, and there is no indication that a second opportunity to amend will lead to him pleading a claim for which the Court could grant him relief. Specifically, since Plaintiff seeks to challenge the actions and rulings related to the Family Court action under Sections 1983 and 1985, there do not appear to be any allegations or legal theories he could

---

[6] The Court finds the remainder of Plaintiff's claims not addressed specifically herein to be without merit. For example, Plaintiff requests the removal of "erroneous records" in state and City agencies. However, he has not identified any erroneous records or suggested any basis on which a federal court could order that state or local governments remove or revise their records. He also asks that his children be returned to him as Plaintiff states that he has had no contact with his children since September 2008. The youngest child was born in July 2005 and is now over 18 years old. ECF No. 14 at 63. Plaintiff suggests no grounds on which a federal court can order his adult children to reside with him or order governmental entities or private organizations to tell him where they live. Additionally, Plaintiff asks this Court to commence criminal prosecutions against Defendants. Private citizens do not have the power to instigate prosecutions of alleged crimes. The decision to investigate or prosecute a person for an alleged violation of a federal criminal statute is left to the discretion of federal law enforcement agencies. *See United States v. Armstrong,* 517 U.S. 456, 464 (1996) ("the decision whether or not to prosecute, and what charge to file or bring before a grand jury rests entirely in [the prosecutor's] discretion"); **Error! Main Document Only.***Leeke v. Timmerman,* 454 U.S. 83, 85–86 (1981) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another"). This Court may not compel prosecuting authorities to commence an investigation or prosecution. *See Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990).

assert that would not be precluded by the *Rooker-Feldman* doctrine or time barred by the statute of limitations. Granting him additional leave to amend would thus be futile.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims fail to state a claim on which relief may be granted. Accordingly, the action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to enter judgment, close the case, and to mail a copy of this order and the judgment to the *pro se* Plaintiff at his last known mailing address.

SO ORDERED.

                                              */s/ Hector Gonzalez*
                                               HECTOR GONZALEZ
                                               United States District Judge

Dated: Brooklyn, New York
       January 28, 2024